UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN L.W. SAMUELS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TRIVASCULAR CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-02261-EMC<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION FOR ATTORNEYS' FEES<br>UNDER 35 U.S.C. § 2285**<br><br>Docket No. 115 |

The above-referenced case is a patent case in which the technology at issue related to an inflatable stent. Plaintiff Shaun L.W. Samuels initiated the case in May 2013. *See* Docket No. 1 (complaint). In November 2015, the Court issued its claim construction order. *See* Docket No. 92 (order). Based on the Court's construction of certain terms, the parties stipulated to a judgment of noninfringement, *see* Docket Nos. 97-98 (stipulation and final judgment), and Dr. Samuels then appealed. *See* Docket No. 100 (notice of appeal). In December 2016, the Federal Circuit affirmed, without giving any analysis. *See* Docket No. 110 (order). Defendants TriVascular Inc. and its co-founders (three individual defendants) now move for attorneys' fees pursuant to 35 U.S.C. § 285. Defendants represent that they have incurred a total of $1,109,213 in litigating the case to final judgment. *See* Mot. at 9; *see also* Dang Decl., Ex. 12 (chart reflecting hours incurred (1,591 hours total) and hourly rates ($195-$1,036 per hour)). In filing the motion, Defendants at this point seek only a determination of whether they are entitled to attorneys' fees and whether this case qualifies as an "exceptional" one. "Defendants shall submit billing records and documentation in support of [the] same following this Court's ruling on entitlement to fees." Mot. at 1 n.1.

Having considered the parties' briefs and accompanying submissions, as well as all other

evidence of record, the Court hereby finds that the matter may be resolved based on the papers only.  Accordingly, the hearing on Defendants' motion is **VACATED**.  The fee motion is **DENIED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

Below is a brief timeline of the relevant events:

- 5/17/2013: Dr. Samuels files the complaint against TriVascular only.  Dr. Samuels asserts infringement of the '575 patent.
- 8/5/2013.  TriVascular files a petition for inter partes review.  *See* Docket No. 43 (Status Rpt. ¶ 2).
- 8/28/2013: The parties stipulate to a stay of the case pending inter partes review.  *See* Docket No. 32 (stipulation and order).
- 2/4/2014: The PTAB issues a decision to institute inter partes review of certain claims of the '575 patent (claims 1, 2, and 4-24).  *See* Docket No. 43 (Status Rpt. ¶ 3).
- 12/3/2014: The PTAB issues a final written decision, in which it finds that the claims at issue are not unpatentable.  *See* Docket No. 43 (Status Rpt. ¶ 4).  Because of the PTAB decision, the stay of the instant case is lifted.
- 2/23/2015: The Court refers the case to private ADR.  *See* Docket No. 49 (order).
- 3/10/2015: The Court sets a claim construction hearing.  *See* Docket No. 52 (minutes).
- 6/8/2015: Dr. Samuels moves to amend the complaint to add the three individual defendants.  *See* Docket No. 60 (motion).
- 7/17/2015: The Court grants the motion to amend.  *See* Docket No. 66 (minutes).
- 8/13/2015: The parties stipulate to the filing of a second amended complaint (Docket No. 76) (order).
- 11/3/2015: The Court holds the claim construction hearing.  *See* Docket No. 89 (minutes).
- 11/12/2015: The Court issues its claim construction order.  *See* Docket No. 92

(order).

- 12/17/2015: The parties stipulate to a final judgment of noninfringement. *See* Docket No. 98 (final judgment).

The stipulation to a final judgment of noninfringement was based in part on the Court's construction of the following term: "a valve integral with the inflatable cuff for permitting entry of the inflation material from the means for injecting and thereafter sealing said cuff to prevent deflation." *See* Docket No. 92 (Order at 11). The Court defined the term as follows: "a valve, integral with the inflatable cuff, that has a movable part or parts (such as leaflets) that open to permit entry of the inflation material and thereafter close to seal the cuff to prevent deflation." Docket No. 92 (Order at 11).

The Court noted that the dispute between the parties regarding the term was

> whether a valve that permits entry and thereafter seals is a valve that (1) has moveable parts that open and close (such as a mitre valve) (TriVascular's position), or that (2) can be such a valve but that can also be a valve without moveable parts, such as a breakaway valve (Dr. Samuels's position).

Docket No. 92 (Order at 13). The Court endorsed TriVascular's position and rejected Dr. Samuels's for the following reasons:

- The term requires that the valve actually seal the cuff after inflation; a breakaway valve may seal *during* inflation but not after – "[w]ith a breakaway valve, the inflation tubing is removed." Docket No. 92 (Order at 14).
- A hardening agent in the inflation material may do the actual sealing (such that the breakaway valve may be removed), but the '575 patent contemplates that the inflation material can be a fluid without any hardening agent. *See* Docket No. 92 (Order at 14). "Dr. Samuels has failed to explain how a breakaway valve could do the sealing (after inflation is competed) in a case where the fluid (inflation material) does not contain any hardening agent without, *e.g.*, a mitre valve." Docket No. 92 (Order at 14).
- The specification references a valve that seals being a valve that closes, which would require moveable parts. *See* Docket No. 92 (Order at 15).
- Dependent claim 9, which references the valve having a breakaway design, "need not be

3

1    interpreted to mean that a breakaway valve is therefore a valve that seals after inflation, as
2    required by claim 1. It does not preclude a breakaway valve in addition to, *e.g.*, a mitre
3    valve as shown in the drawings." Docket No. 92 (Order at 15-16).

## II. DISCUSSION

A.   Legal Standard

> In patent actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In determining whether a case is exceptional, district courts are to use their discretion and consider the "totality of the circumstances" under a preponderance of the evidence standard. *See Octane Fitness, LLC v. Icon Health & Fitness*, 134 S. Ct. 1749, 1756, 1758 (2014). An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. To be considered exceptional, conduct need not be "independently sanctionable." *See id.* Nor is a finding of bad faith required; "a case presenting either subjective bad faith or exceptionally meritless claims" may warrant an award of fees. *Id.* at 1757.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-cv-05235-MMC, 2017 U.S. Dist. LEXIS 5561, at *15-16 (N.D. Cal. Jan. 13, 2017).

B.   Substantive Strength of Party's Litigating Position and/or Manner in Which Case Litigated

Defendants argue that the instant case is an exceptional one because Dr. Samuels lacked a good faith basis to bring suit: a simple pre-suit investigation would have revealed that the accused product did not have a valve but rather simply used a hollow tube and a curable polymer that hardens. *See* Mot. at 3, 7. Defendants further argue that Dr. Samuels thereafter continued to litigate the case in bad faith; for example, he was given a copy of the accused product to review and he was able to take an early 30(b)(6) deposition, both of which should have shown to Dr. Samuels that the accused product did not, in fact, have a valve. Defendants also criticize Dr. Samuels for refusing to specify where in the accused product there was a valve and for adding the three individual defendants to the lawsuit some two years into the lawsuit.

Defendants' contentions are not persuasive. Defendants' basic position is that it was obvious that the accused product did not have a valve, but whether that was true or not would turn on how the Court construed the term "valve" – or more specifically, "valve integral with the

4

inflatable cuff for permitting entry of the inflation material from the means for injecting and thereafter sealing said cuff to prevent deflation." *See* Docket No. 92 (Order at 11). *Compare, e.g.*, *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 481-3 (Fed. Cir. 2016) (upholding district court's finding that the case was exceptional as "[t]he allegations of infringement were ill-supported, particularly in light of the parties' communications and the proposed claim constructions, and thus the lawsuit appears to have been baseless[;] [c]laim construction was unnecessary before finding noninfringement in this case, especially because Lumen View conceded that the claims require preference data from multiple parties," and "'the most basic pre-suit investigation would have shown that the accused AssistMe feature only used the preference data of one party'"). Even though the Court ultimately agreed with Defendants, *i.e.*, that such a valve must have moveable parts, Defendants have not established that Dr. Samuels's position to the contrary, *i.e.*, that such a valve need not have moveable parts but could be, *e.g.*, a breakaway valve, was frivolous or even borderline so. The Court finds that, while Dr. Samuels's position was not substantiated (for the reasons stated above), it was not frivolous. *See Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 U.S. Dist. LEXIS 110522, at *16 (N.D. Cal. Aug. 19, 2015) (indicating that "merely taking an aggressive stance while positing stretched or unsuccessful infringement theories does not, without more, warrant fee-shifting"); *Aylus Networks v. Apple Inc.*, No. 13-cv-04700-EMC, 2016 U.S. Dist. LEXIS 44066, at *22-23 (N.D. Cal. Mar. 30, 2016) (noting that argument was weak but "not completely frivolous" and therefore the case was not exceptional; citing cases where the court did not find exceptionality, even though "the plaintiff's erroneous claim construction was based on a misinterpretation of Federal Circuit case law, and the plaintiff's failure to include the Table of Files in its proposed construction 'strains credibility'" and even though "the court had found in three instances that the plaintiff's proposed claim constructions were inconsistent with the specification and prosecution history and where the plaintiff relied on expert testimony that was excluded under *Daubert*").

    Moreover, Dr. Samuels fairly points out that, if it were so obvious that there was no infringement (on the basis that the accused product did not have a valve), Defendants could have bypassed inter partes review and sought an early claim construction ruling. In reply, Defendants

argue that it was not unreasonable for it to pursue inter partes review because that process "takes only 18 months from filing of a petition to resolution in a final written decision, and typically requires only two major filings by each party" – *i.e.*, the "process had the potential to short-circuit this case." Reply at 2. Defendants add that "plenty of 'rational defendants' have filed *Inter Partes* Review petitions on claims they believed did not infringe." Reply at 2. While Defendants' position is not without any merit, the bottom line is that the more Defendants argue that the lack of a valve was obvious (thus making Dr. Samuels' litigation position frivolous), then it becomes harder to understand why Defendants chose to initiate the IPR process (which could *add* to the length of the proceedings between the parties as there was no guarantee that IPR would be resolved in their favor) rather than proceeding with what they perceived would be a slam dunk victory on the merits in district court.

Dr. Samuels also fairly explains why the three individual defendants were not brought into the case until some two years into the lawsuit – *i.e.*, because for a significant period of time the case was stayed (while inter partes review was ongoing). *Compare, e.g.*, *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374-75 (Fed. Cir. 2015) (noting that "[t]he district court opinion details an egregious pattern of misconduct" and "[e]ven Oplus's counsel 'agree[s] that [the misconduct was] quite severe'"; for example, "the district court found counsel's behavior 'inappropriate,' 'unprofessional,' 'vexatious,' and 'harassing'" and that "Oplus's litigation positions, expert positions, and infringement contentions were a constantly moving target" and that Oplus had pursued an "'abusive discovery strategy'").

At the end of the day, Defendants have failed to show that the instant case is any different from *Aylus* where this Court declined to award fees under § 285. *See Aylus*, 2016 U.S. Dist. LEXIS 44066, at *24 ("Here, Apple does not contend that Aylus engaged in any egregious behavior beyond relying on a claim construction that the Court ultimately rejected. There is no evidence (or even an allegation) of improper motivation or bad faith, and no need to deter Aylus from future litigation. Thus, the absence of egregious behavior, while not dispositive, also weighs against awarding fees in this case.").

As a last ditch effort, Defendants argue – for the first time in reply – that Dr. Samuels

continues to prolong this case unnecessarily by refusing to stipulate to dismissal of Trivascular's counterclaims (for a declaration of invalidity of the '575 patent, breach of agreements, and promissory estopppel) without prejudice.  *See* Reply at 5.  Previously, the parties agreed that Trivascular's counterclaims would be stayed pending Dr. Samuels's appeal of the judgment of noninfringement to the Federal Circuit.  *See* Docket No. 98 (Stip. ¶ 16) (adding that "[t]he stay shall be lifted after the appellate court's issuance of the mandate regarding [Dr.] Samuels's appeal of the Court's judgment").  Defendants argue that, because Dr. Samuels is refusing to stipulate to dismissal of the counterclaims, Trivascular will now "be forced to separately file a motion for dismissal of its counterclaims without prejudice, and [Dr.] Samuels' behavior on this front merely extends his bad faith prolonging of this suit."  Reply at 5.

The Court declines to issue fees based on this last-minute argument.  First, it was not raised until reply.  Second, Dr. Samuels has agreed to a dismissal of the counterclaims without prejudice.  *See* Pl.'s Obj. at 3.  Third, nothing indicates that the dispute over the dismissal of the counterclaims was so prolonged that fees should be awarded.

### III.    CONCLUSION

Accordingly, Defendants' motion for fees is denied.

In addition, the parties are ordered to jointly file a stipulation of dismissal (without prejudice) with respect to the counterclaims.  Because the stipulation should resolve all outstanding matters, the parties shall also file a stipulated final judgment for the undersigned's signature.  **Both stipulations shall be filed within a week of the date of this order.**

This order disposes of Docket No. 115.

**IT IS SO ORDERED**.

Dated: February 22, 2017

_____
EDWARD M. CHEN
United States District Judge

7